THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GEORGE CUNITZ II, Defendant-Appellant.

Fifth District   No. 75-475

Opinion filed January 13, 1977.

James Geis and Richard Steck, both of State Appellate Defender's Office, of Chicago, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and James G. Condon, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant, George Cunitz II, was convicted by a jury of felony escape and felony theft (of property valued over $150). The court sentenced him to imprisonment for three years and four months to 10 years for each offense, the terms to run consecutively. Defendant appeals, presenting five issues for review, all of which we will discuss after reciting the relevant facts.

On August 10, 1972 defendant was serving an eight-month sentence in the Williamson County jail as a condition of probation for felony theft. As the jailer entered the bullpen for a bed check about 10 p.m. that evening, four prisoners, including defendant, overpowered him and bound and gagged him. One of the prisoners took the jailer's billfold containing about $3 and a key to the west door of the jail.

The sheriff of Williamson County and several other officers discovered the jailer between 11 and 11:30 p.m. that evening. A population count showed that four inmates were missing. The jailer and the sheriff entered

the prison booking room containing the prisoners' personal belongings and found the room ransacked. The jailer made a rough estimate at the time that the amount of money taken was about $355, along with some knives and watches.

Two of the escapees were apprehended the same evening and a third was taken into custody the following day. Approximately $50 in cash was recovered from these prisoners. Defendant successfully eluded recapture and joined a show at the State Fair in Springfield, Illinois, and traveled south with it to South Carolina. While there, he was arrested and convicted of house burglary and possession of cannabis and was sentenced to five years in the South Carolina penitentiary. Shortly after his release, he was again apprehended and held in Knoxville, Tennessee. Two Williamson County sheriff's deputies took him into custody there on June 25, 1975.

At trial, the court admitted in evidence as People's Exhibits 1 and 2, the bill of indictment and the judgment and sentence relating to defendant's prior conviction in Illinois of automobile theft. These records referred to the offense as "theft of more than $150"; none referred to the offense as a felony. The trial court also admitted in evidence over objection, People's Exhibit No. 7, which reflected the amount of money and other personal belongings that had been deposited by several inmates in the Williamson County prison booking room at times just prior to the instant escape. The court excluded People's Exhibit 5, an informal record book reflecting daily expenditures by the inmates.

Testifying in his own behalf, defendant denied the theft of the money, stating that he had entered the booking room on the night in question, had found the box with his name on it, and had removed his clothes.

After closing arguments the court supplied the jury with instructions and verdict forms. Neither the instructions nor the verdict forms relating to theft informed the jury that the value of the property taken was a material element of the offense charged and as to which the State bore the burden of proof beyond a reasonable doubt. Similarly, on the escape charge, neither the instructions nor the verdict forms advised the jury, first, that "theft of more than $150" was, in fact, a felony and, second, that proof that defendant was incarcerated for a felony at the time of his escape was a material element of the offense of felony escape. The jury returned verdict forms finding the defendant guilty of theft and guilty of escape.

Defendant contends that the jury verdicts support only a conviction for misdemeanor theft because the jury instructions did not allow the jury to independently determine the value of the property taken, a material element of the offense of felony theft. Defendant relies primarily on

*People v. Dell*, 52 Ill. 2d 393, 288 N.E.2d 459. We agree that it is in point and controlling of our disposition of this aspect of the case.

■■ In *Dell* the supreme court considered all three of the propositions advanced by the State in the instant case to support the felony theft verdict. There, as here, the State contended (1) that defendant waived any error by failing to object or to submit alternative instructions (or verdict forms) for misdemeanor theft; (2) that defendant failed to rebut the proof at trial that the value of the goods stolen exceeded $150; and (3) that the reading of the indictment (which charged theft of property valued in excess of $150) in conjunction with the otherwise vague jury instructions indicated that the jury independently found every material element of the offense. The supreme court found none of these arguments persuasive. It recognized that the issue before it involved the constitutional right to a jury trial, an issue properly raised in a post-conviction proceeding, and found no waiver of the right by mere failure to take some affirmative action to secure the right. The court also reasoned, citing *People v. Swinson*, 406 Ill. 233, 92 N.E.2d 758, that since the value of stolen property is a material element of felony theft, a trial for felony theft requires the jury to determine independently the value element. Rejecting the analysis of the dissenting justice, based principally on *People v. Harden*, 42 Ill. 2d 301, 247 N.E.2d 404, the majority held that the verdict supported only a conviction for misdemeanor theft.

The State argues that the application of the *Dell* case is explained away by *People v. Eastland*, 11 Ill. App. 3d 271, 296 N.E.2d 363; and *People v. Clement*, 28 Ill. App. 3d 136, 327 N.E.2d 601. We disagree. The *Eastland* case did not mention *Dell* but relied wholly on *Harden* and the fact that the jury was instructed that the defendant was charged with theft of property exceeding $150 in value. The *Clement* case is somewhat similar in that the court inferred that the value of the property was described as an element of the offense in the issues instruction. That factor was deemed sufficient to distinguish the case on its facts from *Dell* and to require the application of *Harden*.

The same court that decided the *Clement* case had occasion later to consider the same proposition in *People v. Pugh*, 29 Ill. App. 3d 42, 329 N.E.2d 425. There the issues instruction did not set out every essential element of a felony theft charge but rather eliminated all reference to the essential element of value, and did not instruct that the State had any burden of proof on the issue that the value of the property taken exceeded $150. The jury returned a general verdict form finding defendant "guilty of theft" with no reference to a felony count of the indictment or other indication that the finding was of felony theft. In the absence of any point of reference to indicate the jury's intent in rendering

the general verdict, the court distinguished *Clement* on the facts and held that the verdict would support only a conviction for misdemeanor theft.

■■ The present case presents a situation even more favorable to defendant's position than the cases presented in *Swinson* and *Dell*. In the present case the jury returned a general verdict and made no specific finding of the value of the goods stolen. But unlike *Swinson* and *Dell* the defense here contested the value of the property taken, getting the jailer to admit that because the daily withdrawals of money by inmates, he had no way of knowing the exact amount of money taken from the record room. Defendant also testified that he took only his possessions from the record room. Further undermining the State's position, the court in *Dell* instructed the jury that it must find every material allegation in the indictment. In this case no similar instruction was given, although, as in *Dell*, the felony theft indictment was read to the jury. Nor was the jury apprised of its duty to find value in any other way. Cases cited by the State, which in effect rely on the dissent in *Dell* and on *Harden*, are distinguishable. Consequently, we find that the verdict rendered here cannot support a conviction for felony theft. *People v. Pugh.*

We insert as a caveat the observation that the problems of determining whether the jury has or has not found a defendant guilty of felony theft are very likely the result of the neuter phrasing of the Illinois Pattern Instructions, Criminal, pertaining to theft. In that series of instructions, beginning with number 13.01, no account is taken of the difference between felony theft and misdemeanor theft. No form is provided or suggestion made that would advise a jury of the valuation distinction between a felony and a misdemeanor. The decisions in many cases by courts of appeal in this State have admonished attorneys that when there is an instruction in Illinois Pattern Instructions, in either civil or criminal cases, relevant to an issue, that instruction must be used. Quite naturally then, prosecutors dutifully, if thoughtlessly, adopt the IPI Criminal instruction in its stated form. Where a defendant is being prosecuted for felony theft, problems arise, as in the cases discussed above. In a typical case, prosecution for theft by unauthorized control, the jury will be given an instruction that defines the crime and sets forth its elements, number 13.01, an instruction that sets forth the issues and the burden of proof which the State must meet, number 13.02, and a verdict form for finding defendant guilty, number 26.05. None of these instructions address the critical issue of valuation of the property where the charge is felony theft.

We think that some changes in the IPI Criminal instructions would be helpful; either in the substantive wording of the instructions themselves or in the Committee Notes of explanation in the use of the instructions.

Defendant next contends that the jury verdict will not support a

conviction for felony escape. In his opening statement the State's Attorney told the jury that at the time of his escape the defendant was serving a sentence in the Williamson County jail for "auto theft." The judgment and mittimus for that offense were submitted to the jury as People's Exhibits 1 and 2. Both exhibits refer to the offense of "theft of property valued at more than $150" but neither referred to the offense as a felony. Neither the issues instruction nor the verdict form contained any indication that defendant was incarcerated for a felony at the time of his escape. Defendant therefore argues that the jury did not independently determine a material element of the offense charged and consequently his constitutional right to a trial by jury was abridged and the verdict will support only a conviction for misdemeanor escape.

■■ Proof that defendant was in a penal institution for a felony at the time of his escape is the essential element that distinguishes the offense of felony escape from misdemeanor escape. *People v. Arbuckle*, 69 Ill. App. 2d 251, 215 N.E.2d 825; Ill. Rev. Stat. 1975, ch. 38, pars. 31—6(a) and 31—6(b).

■■ Although this element of felony escape was not presented for jury determination, we have nevertheless determined that no error occurred. We have reached this conclusion because the nature of the offense for which defendant was incarcerated at the time of his escape, either felony or misdemeanor, is a question of law, not of fact. As such, it is to be determined by the court, not the jury, and consequently defendant has not been deprived of his constitutional right to a jury trial.

By the common law jurors in both criminal and civil cases are to determine only questions of fact; it is for the court alone to determine questions of law. (*People v. Bruner*, 343 Ill. 146, 175 N.E. 400.) That common law distinction of function was continued by article I, section 13 of the Illinois Constitution of 1970 which provides: "The right of trial by jury as heretofore enjoyed shall remain inviolate." The significant words are "as heretofore enjoyed." (*People v. Bruner*.) In criminal cases the common law rule is, in fact, adopted by statute. Section 115—4(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 115—4(a)) provides: "Questions of law shall be decided by the court and questions of fact by the jury."

■■ We think it beyond argument that the nature of the crime for which defendant was confined at the time of his escape, either misdemeanor or felony, is purely a question of law. Accordingly, it is to be determined by the court, not the jury. The sole function of the jury in resolving the issue in question was to determine from the evidence presented whether in fact defendant did escape.

■■■ Defendant could argue with some degree of persuasion that the jury should have been told by an instruction that defendant was at the

time of the incident incarcerated for a felony and that anyone who escapes from confinement when incarcerated for a felony is guilty of a felony. Such procedure would doubtless be the better practice, but notwithstanding, if error occurred by the omission to so instruct the jury prior to its finding, we deem it harmless. The nature of the crime for which defendant was confined at the time of his escape is, after all, immaterial to the question of whether an escape was made. Proof of the nature of the crime for which defendant was confined could be submitted and determined from the record by the court at the time of the sentence hearing. *Cf. People v. Simos*, 345 Ill. 226, 178 N.E. 188; *People v. Brown*, 354 Ill. 480, 188 N.E. 529.

Defendant next asserts that it was plain error for the prosecution to cross-examine him about his prior convictions instead of introducing an authenticated copy of the record of each conviction in rebuttal.

On cross-examination of defendant by the prosecution, the following colloquy took place:

"Q How long were you in South Carolina?

A From October of 1972 until May of 1975.

Q Was that all in Aiken?

A Aiken and Columbia.

Q What were you doing in Aiken?

A Well, first I was a forklift operator and then I worked for a roofing contractor.

Q What did you do in Columbia?

A I was serving time there.

Q Time?

A Yes.

Q In the South Carolina State Pen?

A Right."

On recross, the prosecution inquired further:

"Q And what were you serving time for in South Carolina?

A The charge was housebreaking and possession of marijuana."

The prosecution did not tender a certified copy of the record of these convictions at any time during trial. Defendant did not object to any of the questions regarding defendant's prior record but asks this court to take note of the matter under the doctrine of plain error.

■■■ We think the State's contention that the defendant waived the issue by his failure to object at trial is well taken. The case is controlled by *People v. McCrimmon*, 37 Ill. 2d 40, 224 N.E.2d 822. There, defendant was cross-examined regarding his prior record without an authenticated copy thereof being introduced. Defendant's counsel made an objection but it was upon grounds other than that the prior conviction should have been shown by an authenticated copy of the record of that conviction.

Citing *People v. Jennings*, 298 Ill. 286, 131 N.E. 619, and *Simons v. People*, 150 Ill. 66, 36 N.E. 1019, the supreme court said:

> "It is clear that the prosecution had no right to prove by parol that the defendant was convicted of an infamous offense, but the evidence was not objected to on the ground that the fact could not be proved by parol. It was not suggested to the court that the fact of conviction could only be proved by an authenticated copy of the record. Had the objection been made on this ground, doubtless the court would have excluded the evidence. The general objection made by the defendant was not sufficient." 37 Ill. 2d 40, 47.

Also see *People v. Madison*, 56 Ill. 2d 476, 309 N.E.2d 11.

Defendant also argues that it was improper for the court to enter judgments for both escape and felony theft since both convictions arose out of the same transaction or course of conduct.

■■ The conduct constituting the theft of property from the jail record room was independently motivated and was separable and distinct from the conduct comprising the felony escape from the jail. Under these circumstances two crimes were committed and there can be two convictions. *People v. Williams*, 60 Ill. 2d 1, 322 N.E.2d 819; *People v. Ike*, 7 Ill. App. 3d 75, 286 N.E.2d 391.

"Conduct," as defined in the Criminal Code, means "an act or series of acts, and the accompanying mental state." (Ill. Rev. Stat. 1975, ch. 38, par. 2—4.) The "conduct" supporting the theft conviction, although closely related, did not include the conduct which supported the escape conviction. The offenses have different elements of proof and could have been proved independently without reference to the conduct constituting the other. Proof of theft necessitates proof of a specific intention to deprive the owner permanently of the use or benefit of his property, while proof of escape must include proof of an intention to escape. The intent to steal is quite different and separable from the intent to escape. Doubtless defendant and his fellow escapees may have planned the theft before escaping in order to facilitate their getaway, but the theft was not necessary to the escape. Correlatively, if defendant had been caught with the goods while still inside the jail, he still could have been convicted for theft (and attempted escape). Defendant cites *People v. Whittington*, 46 Ill. 2d 405, 265 N.E.2d 679, and *People v. Coultas*, 30 Ill. App. 3d 81, 332 N.E.2d 169, in support of his contention but we find both distinguishable on their facts.

Defendant next contends that the trial court erred in imposing consecutive sentences.

Section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(a)) provides in pertinent part:

> "* * * The court shall not impose consecutive sentences for

offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective."

For reasons stated above we find that the theft constituted a substantial change in the nature of the criminal motivation. The theft was not essential to the prisoner's objective, despite its proximity in time. As also determined above, the conduct comprising the theft was divisible and not an included element of the escape. Hence, we find that this contention lacks merit.

■■ Defendant argues that consecutive sentences are inappropriate because of his youth and background as well as the nature of the offense. He also claims that the disparate concurrent sentences imposed on his co-participants requires reduction of his sentence. We disagree.

The Unified Code of Corrections, section 5—8—4(b) (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(b)) provides:

"The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant * * *."

We believe that the nature and circumstances of these offenses and defendant's history and character justified the trial court's imposition of consecutive sentences.

■■ The standards of review where the sentences imposed are within statutory limits is whether the trial court abused its discretion. (*People v. Taylor*, 33 Ill. 2d 417, 211 N.E.2d 673.) To modify the sentences it must appear to the court that the punishment imposed clearly departs from fundamental law, its spirit and purpose, and the requirement of our constitution that the sentence be proportioned to the nature of the offense and measure the possibilities for rehabilitation. (*People v. Grau*, 29 Ill. App. 3d 327, 330 N.E.2d 530; *People v. Smith*, 28 Ill. App. 3d 908, 329 N.E.2d 896.) On this record we find no abuse of discretion in sentencing. Defendant had a long prior record. He was declared a delinquent as a juvenile for the offense of attempt murder and was placed on probation under age 21. The court later revoked probation and committed him to a juvenile institution. He had prior convictions for theft (over $150), possession of cannabis, and house burglary. The instant offenses were escape compounded by theft. In light of these circumstances the trial court could properly have concluded that imposition of consecutive sentences was necessary to protect the public from further criminal conduct by defendant.

Finally, we consider defendant's contention that the trial court imposed excessive consecutive sentences because their aggregate minimum

exceeded that authorized under a predecessor of section 5—8—4(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(c)), which was in effect during the pendency of this case. The statute defendant seeks us to apply provided that:

> "* * * The aggregate minimum period of consecutive sentences shall not exceed twice the lowest minimum term authorized under section 5—8—1 for the most serious felony involved." Ill. Rev. Stat. 1973 Supp., ch. 38, par. 1005—8—4(c) (effective January 1, 1973, to July 1, 1974).

The legislature enacted this provision after the defendant committed the offense and after his indictment. Before January 1, 1973, there was no statutory limit on the aggregate minimum for consecutive sentences. (Ill. Rev. Stat. 1971, ch. 38, par. 1—7(m).) By the time of trial, however, the intervening provision had been repealed and the following provision was in effect:

> "* * * The aggregate minimum period of consecutive sentences shall not exceed the highest minimum term authorized under Section 5—8—1 for the 2 most serious felonies involved." Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(c).

Defendant was sentenced in September of 1975, over a year after the effective date of the most recent amendment to the Code.

■■ ■ Although the law in effect at the time prosecution was commenced was stricter than the present law, we have determined that the reasoning of *People v. Williams*, 60 Ill. 2d 1, 322 N.E.2d 819, requires us to apply the intervening consecutive sentencing provision (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(c)) which is the most favorable that might be applicable to defendant. The effective date of this statute accrued while this case was pending trial. Under this consecutive sentencing statute, the aggregate minimum period of consecutive sentence could not exceed twice the lowest minimum term authorized under section 5—8—1 of the Unified Code of Corrections for the most serious felony involved. Because the lowest minimum for felony escape, the more serious offense (a Class 2 felony), is one year, the aggregate minimum for the two sentences imposed in this case could not exceed two years. Accordingly, we are of the opinion that the court erred in imposing the consecutive minimum sentences it did.

The conviction and judgment for theft are modified to reflect a conviction and judgment for misdemeanor theft. The conviction and judgment for escape are affirmed. The cause is remanded for re-sentencing.

Affirmed in part; modified in part; and remanded.

CARTER, P. J., and KARNS, J., concur.